**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY.**

**Civ. Nos. HM75–1712, HM75–1812, HM75–1813, HM75–1814 and HM75–1815.**

United States District Court,
D. Maryland.

May 4, 1976.

Abner W. Sibal, Gen. Counsel, William L. Robinson, Associate Gen. Counsel, David W. Zugschwerdt, Asst. Gen. Counsel, Vincent A. Fuller, Jr. Supervisory Trial Atty., Katherine Savers McGovern, Atty., E. E. O. C., Washington, D. C., and Valerie Olson, Atty., E. E. O. C., Baltimore, Md., for petitioner.

Stephen D. Shawe, Arthur M. Brewer, Leslie R. Stellman and Patricia S. Kuzma, Baltimore, Md., Attys. for respondent.

## MEMORANDUM

HERBERT F. MURRAY, District Judge.

The five cases to be considered herein were brought by the Equal Employment Opportunity Commission (the Commission) to enforce subpoenas issued by the Commission to the United States Fidelity and Guaranty Company (the respondent or the Company) pursuant to Section 710 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e–9. Jurisdiction is conferred upon the Court by Sections 706(f)(3) and 710 of Title VII, 42 U.S.C. Sections 2000e–5(f)(3) and 9. Oral argument was heard in these matters on January 14, 1976. Respondent then filed a motion for further oral argument which was granted by the Court. Further argument was heard on April 2, 1976. Having considered the extensive and helpful briefs and oral arguments, it is the opinion of the Court that the subpoenas should be enforced in part and quashed in part. The Court will set forth the reasons for its determination below and will consider all five cases in this Memorandum and Order.

The five cases before the Court will be referred to by the name of the charging party as follows:

1. 75–1712 Rhona Stulman

2. 75–1812 Juanita Jethro
3. 75–1813 Nancy Kohagen
4. 75–1814 Rita Cross
5. 75–1815 Brenda McDuffy.

The Court will consider each case separately.

1. *Statement of Facts: Stulman Charge (HM75–1712)*

On December 20, 1972, Rhona Stulman filed a charge against respondent with the Commission, which alleged that the Company had discriminated against her with respect to employment opportunities, and terms and conditions of employment while employed by the Company, and with respect to references and recommendations after she ceased to be employed by the Company. Ms. Stulman alleged that the discriminatory activities were because of her religion, Jewish, and were of a continuing nature. On December 20, 1972, the Commission served notice of the Stulman charge upon the respondent.

On January 15, 1975, Ms. Stulman amended her charge against respondent to allege sex also as a basis for her charge. On that same day, Ms. Stulman lodged a second charge alleging that respondent continued to harass and retaliate against her because of her religion and sex with respect to references and recommendations. This charge, although related to and stemming from the unlawful employment practices alleged in her initial charge, TBA3–0566, was assigned a different control number, TBA5–1385. The Commission then requested certain information from the respondent and is now seeking that information through subpoena.

On July 26, 1974, the Commission adopted internal guidelines which provided for the administrative processing of 707 charges and 706 charges by the Office of the General Counsel in cooperation with its District Offices. In conformity with these guidelines, the original Stulman charge was consolidated for processing with a 707 Commissioner's Charge, *Powell v. United States Fidelity and Guaranty Company*, TBA5–0366, in January, 1975. The second charge

was later consolidated with the Commissioner's Charge. The purpose of this consolidation will be considered below.

Before dealing with respondent's objections to the subpoena enforcement, the Court will discuss a preliminary matter raised by the Commission.

■ The Commission contends that the respondent is barred from raising issues before the Court which it failed to raise in its Petition to Revoke before the Commission. The Commission seeks to bar court consideration of the defenses of relevancy, burdensomeness and delay. The Commission quotes the following from *Unemployment Compensation Commission v. Oregon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136, 146 (1946):

> A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its actions.

The difficulty with the Commission's reasoning is that this Court is not functioning as a reviewing court in an action for subpoena enforcement. The Court does not study the record and determine whether the Director of Compliance or the Commission acted properly in refusing to quash a subpoena. A subpoena enforcement proceeding is a *de novo* proceeding before this Court. Therefore, the Court sees no reason to limit the arguments respondent may raise and will not do so.

*Timeliness of Filing*

■ Respondent contends that the charge filed by Ms. Stulman on December 20, 1972, was filed beyond the then applicable 210-day limitations period provided in Section 706(d) [now 706(e)] of Title VII, *as amended*, 42 U.S.C. § 2000e *et seq.* It is argued that Ms. Stulman did not charge any continuing violation, and thus she was required to file charges within 210 days of her termination on November 16, 1971.

Ms. Stulman in her charge alleges that respondent discriminated against her until November 16, 1971, concerning advance-, ment, assignment, wages and benefits because of her religion, Jewish. She also alleges harassment. Her third charge is that respondent discriminated against her concerning recommendations and references because of her religion.

In its reply, the Commission states that it is not seeking to investigate those aspects of the charge relating to events occurring while Ms. Stulman was employed and at the time of discharge for the purpose of making a determination on the merits with respect to those allegations, further stating:

> We agree that those allegations are untimely for that purpose and are attempting . . . to investigate the allegation which was timely filed, the recommendations/references issue. (at 2)

The question before the Court, then, is whether that portion of the charge concerning recommendations and references was timely filed. The Court holds that it was. The issue of recommendations and references clearly continues after termination of employment and would usually not even arise *until* that time. The limitations period does not apply to continuing violations and cannot be relied on by respondent in the instant case.

*Amendment of Charge*

■ Respondent contends that the charging party's attempt to amend her first charge is impermissible, irregular and highly prejudicial to the respondent. Ms. Stulman amended her original charge on January 15, 1975, to allege as follows:

> I believe that the above-named company has discriminated against me with regard to promotion, job assignments, benefits (holidays), wages, harassment, transfer, and discharge because of my religion (Jewish).
> I believe that I was also discharged because of my sex (female).
> I and females as a class are discriminated against by the above-named company with regard to wages, promotions, trans-

fer, and segregated job classifications, because of our sex.

Ms. Stulman also filed a new charge on that date which is basically an amendment to the first charge:

> I believe that the above-named company retaliated against me because I filed a charge of discrimination in employment against it, within the meaning of Section 704(a) of Title VII, as amended. I believe that the above-named company gave me unsatisfactory references and recommendations which prevented me from finding permanent employment.

The E.E.O.C. Regulations on amending charges state:

> [A] charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments alleging additional acts which constitute unlawful employment practices directly related to or growing out of the subject matter of the original charge will relate back to the original filing date. (29 C.F.R. § 1601.-11(b))

The Court holds that both amendments come within the scope of the regulation as being "directly related to or growing out of the subject matter of the original charge." The first amendment alleges the same discriminations as the original charge but adds sex as a further basis for the discriminations. It clearly involves the same subject matter as the charge. The second amendment is also related to the charge, since it alleges unsatisfactory references and recommendations. The issue of references and recommendations was also raised in the original charge. The amendment simply makes it clear that the discrimination in that regard is continuing.

■ Respondent further contends that the timing of the amendments goes well beyond the reasonable length of time justified by the rules of equity and that the untoward delay in informing the respondent of the existence of totally different charges arising out of events which oc-

curred three years before has deprived respondent of the means to reconstruct or dispute the circumstances underlying the charge. The Court will address only the question of references and recommendations and retaliation since the Commission has stated that it is seeking only to investigate those aspects of the charge, agreeing with respondent that the other elements were not timely filed. Respondent cannot contend that it was unaware of Ms. Stulman's charge of discriminatory references until January, 1975 when the original charge was amended. The original charge, of which respondent received prompt notice, alleged discrimination concerning references.

In addition, the amended charge alleges that the discriminatory references are still continuing and that they did not stop with the filing of the original charge. Thus, it is not the case that respondent is only now being informed of events which occurred three years before; rather, the events allegedly are still continuing. The same is true for the charge of retaliation. Respondent is on notice of these alleged violations and can preserve the means of disputing the circumstances underlying the charge, just as it could when it first received notice of the original charge on December 20, 1972. Therefore, the Court is not satisfied that equity demands the barring of any amendment.

The Court holds that the original charge was timely filed and that it was properly amended. The allegations in the amendments are directly related to and grow out of the subject matter of the original charge, and the amendments were timely filed.

### Consolidation

Respondent contends that the Stulman charge, which alleges religious discrimination, should not be consolidated with the Commissioner's charge, which alleges race, sex and national origin discrimination. Respondent states that it fails to see any relationship between a charge of religious discrimination and the Commissioner's charge, submitting that nothing is more unrelated to a charge of race, sex or national origin discrimination than a charge of religious discrimination.

The purpose of consolidation was discussed by the Court in an earlier opinion in *E.E.O.C. v. United States Fidelity and Guaranty Co.*, HM75–366, Oct. 31, 1975, upholding the right of the Commission to consolidate certain charges. It is useful to review that background in the instant case. The Commission's Procedural Regulations dealing with the processing of 707 cases provide for the consolidation of related charges. *See* E.E.O.C. *Procedural Regulations* § 1601.50 *et seq.*, particularly § 1601.-52. These regulations were developed and promulgated after the Commission was given exclusive jurisdiction and authority on March 24, 1974, over all allegations of patterns and practices of discrimination under Section 707. Section 1601.52 provides:

> Any member of the Commission may designate a charge for § 707 processing under this subpart. Any related charge shall be processed under this subpart if the General Counsel determines that it should be consolidated with the charge designated for § 707 processing by a member of the Commission.

The regulation provides that *any related* charge may be consolidated. One of the Commission's principal concerns in the development of its 707 case processing regulations was to assure that individual charges raising like or related issues be consolidated for processing with any 707 Commissioner's charge against the same respondent in order to assure maximum use of the agency's resources and maximum benefit to the victim of unlawful discrimination. Although the Commission consolidates the charges for processing, each charge is handled individually, and individual findings and determinations are made. It would be unfair to do otherwise, for the relative merits of individual charges differ, and the relief sought depends often on the circumstances peculiar to the individual charging party. Such consolidation of charges for administrative processing is done routinely, not only after the

707 procedures, but in the Commission's regular processing of Section 706 charges.

██ Consolidation of individual private charges with a Commissioner's charge against a respondent is appropriate and proper because it is an efficient and effective way of dealing with allegations of·unlawful employment discrimination directed at a given respondent. Through consolidation, the agency can deal with such important matters as eliminating the potential problem of the *res judicata* effect of the resolution of one or more charges on the legal rights of charging parties or persons covered by other similar charges against the same respondent, reducing or eliminating the enormous backlog of charges which have accumulated and continue to accumulate, and resolving the problems of overlapping charges in one consolidated proceeding instead of through overlapping investigations.

██ Given these important purposes served by consolidation, the Court is of the opinion that the Commission should be given broad discretion in determining what charges can be considered "related" to other charges. The Court does not find in the instant case that the Commission has overstepped the bounds of that discretion. It is not necessary for one charge to allege the *identical* type of discrimination as the Commissioner's charge for it to be related. A charge may be considered related to a Commissioner's charge if it is clear to the Commission that consolidated investigation would eliminate overlapping effort. This is a determination to be made by the General Counsel of the Commission who, in the instant case, ratified the consolidation upon the recommendation of the Associate General Counsel, William L. Robinson. Mr. Robinson explained in his memorandum to the General Counsel:

> The Stulman charge raises issues of continuing retaliation and harassment because of her initial charge which raised promotions, wage, transfer issues. This second charge is being administratively processed with the *Powell* charge because it grows out of and is connected to the

initial charge. Consolidation is proper and desirable both because it is consistent with the underlying policy of the Commission's regulations and procedures, and for administrative convenience. The purpose of consolidation is to attempt to resolve in one proceeding all charges that raise issues covered by a Commissioner's Charge. This is why the initial Stulman charge was consolidated in this investigation. And, as a practical matter, it makes sense to administratively process the Stulman retaliation charge with the initial charge so that they may be disposed of in the same proceeding. Such processing will eliminate the need for unnecessary coordination and the possibility of inconsistent processing by two separate Commission units.

Mr. Robinson's explanation appears reasonable to the Court, and in the absence of compelling reasons dictating a contrary result, the Court is hesitant to overturn a ruling of the General Counsel on the issue of consolidation.

The Court is guided in its decision by the recent case of *E.E.O.C. v. General Electric Co.*, 532 F.2d 359 (4th Cir., 1976). The court in *General Electric* held:

> *So long as the new discrimination arises out of the reasonable investigation of the charge filed,* it can be the subject of a 'reasonable cause' determination, to be followed by an offer by the Commission of conciliation, and, if conciliation fails, by a civil suit, without the filing of a new charge on such claim of discrimination. In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for *any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge,* provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act. (at 366)

The court rejected the position of the lower court that the right to include an additional claim of discrimination uncov-

ered in the investigation in a civil suit was limited to the claims that might have been raised by the charging party. The lower court had held that the EEOC could not charge sex and race discrimination in a civil suit where the charging party was a black male and would not have had standing to claim the company discriminated against females.

It is true, as respondent contends, that the *General Electric* decision does not deal directly with the scope of the investigation but with the scope of the civil suit. However, the language and holding of the case indicate that the Fourth Circuit is inclined to permit the Commission wide powers of investigation. A claim of sex discrimination reasonably could not be expected to grow out of a charge of racial discrimination unless the Commission were granted broad investigatory powers, and yet this is precisely the situation approved by the court in *General Electric*. As the court stated:

> The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom, or the reasonable cause determination that may be rested on that investigation. The charge merely provides the EEOC with 'a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices;' and that investigation may well 'disclose, as in this instance, illegal practices other than those listed in the charge' and provide a basis for a reasonable cause determination with respect to those practices. (at 364)

The court further noted with approval several cases holding that the scope of the investigation is a broad one, quoting language from *Motorola, Inc. v. McLain*, 484 F.2d 1339 (7th Cir. 1973), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 287 (1974) as follows:

> Most of the courts which have considered the scope of the investigatory powers of EEOC have agreed that they are broad. *Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission*, 418 F.2d 355, 358 (6th Cir. 1969) ('Title VII . . . should not be construed narrowly . . . .'); *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 425 (8th Cir. 1970) ('Title VII of the Civil Rights Act of 1964 is to be accorded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination'). One district court which sought to find that 'Congress intended to deny the Commission the broad investigatory powers of other federal agencies . . . .' was expressly reversed by the Court of Appeals. *Graniteville Co. v. Equal Opportunity Commission*, 316 F.Supp. 1177, 1185 (D.S.C.1969), rev'd, 438 F.2d 32, 39 (4th Cir. 1971). (quoted at 365, n. 10)

The court further noted that *Motorola* drew upon the legislative history of the 1972 amendments to show that

> . . . Congress, which in its original action thought in terms of discrimination as expressed in 'isolated and distinguishable events, due, for the most part, to ill-will on the part of some identifiable individual,' had by 1972 begun to see employment discrimination as 'a far more complex and pervasive phenomenon' expressed generally 'through various institutional devices, and validation requirements.' (484 F.2d at 1344) (*Ibid.*)

Guided by the court in *General Electric* and by the useful purpose served by consolidation, this Court holds that the Stulman charge may properly be consolidated with the Commissioner's charge and that the determination of the General Counsel that consolidation is inappropriate must stand.

*Investigative Entity*

■ Respondent contends that the subpoena in this matter is invalid because it demands that various personnel records be presented to a person not authorized to receive them, namely the Staff Attorney for the Commission's General Counsel. Respondent contends that the Regulations require that charges of unlawful discrimination when filed in a Commission District

office are to be investigated by that office, and as such the Baltimore District office is the only Commission entity authorized to investigate the matter. Respondent concludes that the Commission's attempt to process this charge through the General Counsel's office as part of its investigation of a Commissioner's charge is improper and prejudicial.

Respondent further contends that Title VII does not contemplate the involvement of the General Counsel's office in the investigatory stage of a local proceeding filed by a single individual in accordance with Section 706 in a local District office.

Although respondent does not flesh out these arguments in its memorandum, it appears that respondent is contesting the consolidation procedures discussed immediately above by the Court. The Court has held that the Commission has authority to consolidate individual charges with a Commissioner's charge. Once consolidation has been approved, the General Counsel may be involved in the investigatory proceedings. 42 U.S.C. § 2000e–4(b)(1) provides in part:

> The General Counsel shall have responsibility for the conduct of litigation as provided in sections 2000e–5 and 2000e–6 of this title. The General Counsel shall have *such other duties* as the Commission may prescribe or as may be provided by law and shall concur with the Chairman of the Commission on the appointment and supervision of regional attorneys. . . . (emphasis supplied)

The Regulations governing case processing under § 707 provide that the General Counsel shall process Section 707 charges. They delegate to the General Counsel the authority to give notice of and to defer charges to state and local 706 agencies, to give notice of charges to respondents, to investigate charges, to sign and issue subpoenas, and to conciliate charges of employment discrimination. (§§ 1601.50–1601.59) Therefore, it is entirely appropriate for the General Counsel to be involved in this stage of the proceedings and for the records to be presented to the Staff Attorney for the General Counsel.

In addition, respondent, though asserting that the involvement of the General Counsel's office is "prejudicial", has not attempted to demonstrate any prejudice that has or will result from this procedure. For both of these reasons, the Court holds that the Commission is following the proper procedure in investigating the charges.

*Constitutionality of Regulations*

■ Respondent contends that the Court should deny E.E.O.C.'s application for subpoena enforcement as the procedure governing the issuance of subpoenas by the E.E.O.C. is unconstitutional. Respondent relies upon *E. E. O. C. v. Exchange Security Bank,* 11 FEP Cas. 764 (N.D.Ala.1974), in support of its contention. In that case, the court held that the Commission's procedure governing the issuance of subpoenas was of doubtful constitutionality because:

> . . . the recipient of a subpoena who is aggrieved by the determination of the Director of Compliance has no meaningful opportunity to disagree with the Director's findings and to present to the Commission arguments in support of its disagreement. (11 FEP Cases at 766)

The statutory authority of the Commission to investigate, contained in Section 709(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–8(a), provides that:

> In connection with any investigation of a charge filed under section [706], of this title the Commissioner or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this title and is relevant to the charge under investigation.

In addition, the Commission's authority to investigate and issue subpoenas is granted by Section 710 of Title VII, 42 U.S.C. § 2000e–9, which incorporates by reference Section 11 of the National Labor Relations Act, 29 U.S.C. § 161. That section provides:

For the purpose of all hearings and investigations, . . . (1) The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceedings or investigation. Within five days after the service of a subpoena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpoena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpoena does not describe with sufficient particularity the evidence whose production is required.

Pursuant to the above authority, the Commission delegated the authority to issue subpoenas in the first instance to any District Director or Deputy District Director. One moving to revoke or modify a subpoena may file a petition with the Director of Compliance. Section 1601.15(b) of the Procedural Regulations states that:

Within 5 days after the receipt thereof [of the petition], so far as practicable, the Director of Compliance shall make a determination upon the petition, stating reasons, which shall be reviewed by the Commission and unless the Commission decides otherwise shall become final 3 days thereafter. . . .

The court in *Exchange Bank,* in holding the above procedures unconstitutional, relied on *NLRB v. Duval Jewelry Company, Inc.,* 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097 (1958), which held that the NLRB's delegation to hearing officers and regional directors of authority to issue subpoenas

and make preliminary rulings on petitions to revoke those subpoenas did not deprive respondents of due process because the NLRB reserved final determination on the legality of such subpoenas to itself. Specifically, under applicable NLRB Regulations, a respondent was provided an opportunity to request special permission from the NLRB to appeal an adverse ruling on the subpoena. In that event, the NLRB took affirmative action, based on the arguments of the respondent, and would grant or deny the respondent's request for an appeal. This procedure, the court held, "stands in sharp contrast" to the procedures followed by the EEOC. The Court further stated:

The very essence of procedural due process is the right to be heard that is, the right to marshal and present arguments in support of one's position and to respond to arguments that attack that position. . . . Passive endorsement by the Commission of the finding or reasoning of the Director of Compliance, absent opportunity to the petitioner to attack that finding and reasoning, does not accomplish this. (*Ibid.*)

Respondent urges this Court to adopt the position of the court in *Exchange Bank* and refuse to enforce the instant subpoenas. This Court, however, is guided by *EEOC v. Raymond Metal Products Co.,* 530 F.2d 590 (4th Cir., 1976), and holds that the procedure governing the issuance of subpoenas is not unconstitutional.

In *Raymond Metal Products,* the court reversed the district court's ruling that the Commission improperly delegated its authority to subordinates and failed to comply with its own regulations concerning notification that conciliation efforts had failed. The regulation before the court was 29 CFR § 1601.19b(d), delegating to district directors authority to dismiss charges, issue determinations as to reasonable cause, and make and approve conciliation agreements. A district director's determination of reasonable cause is final and cannot be appealed to the Commission, although he may reconsider his finding at any time. The district court considered the regulation to

be procedural, rather than substantive, and ruled that the Commission could delegate to the district directors authority to determine whether probable cause exists and to make and approve conciliation agreements. It found flaws in the regulation, however, because the determination of probable cause was not reviewable by the Commission and because the district director's implicit power to disapprove a conciliation agreement gave the director "de facto power" to commence civil actions.

The court agreed with the lower court that the regulation was procedural and therefore conformed to the statutory requirement found in 42 U.S.C. § 2000e–12(a) that the Commission issue "suitable procedural regulations to carry out the provisions" of Title VII. The court further held that the regulation was not invalidated either by the absence of a provision for administrative review of the district director's determination that reasonable cause exists or by the director's implied power to disapprove a conciliation proposal, relying on *Fleming v. Mohawk Wrecking & Lumber Co.,* 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947). In *Fleming,* the Supreme Court considered whether the Emergency Price Control Act permitted the administrator to delegate his authority to issue subpoenas. Relying on the statutory authority for the administrator to make regulations to carry out the purpose of the Act, the Court approved the delegation. It said, "Such a rule-making power may itself be an adequate source of authority to delegate a particular function, unless by express provision of the Act or by implication it has been withheld." (331 U.S. at 121, 67 S.Ct. at 1134, 91 L.Ed. at 1385.) As the court noted in *Raymond Metal Products,* an "important factor suggesting to the Court that Congress did not intend to prohibit such delegation was the complexity of administering the statute." (530 F.2d at 594)

The court reasoned:

Except for the limitation to procedural regulations, the present statute is virtually identical to the one considered in *Fleming.* In this case, as in *Fleming,* there is

no express denial of the power to delegate. Here, too, the magnitude of the task militates strongly against a decision that Congress intended not to allow the commission to delegate these functions. In fiscal year 1974, a total of 9,035 reasonable cause determinations were issued and 5,198 were denied. Were the commission forced to decide or review each of these determinations as they were made, it would be hard pressed for time to make policy, consider charges that present novel and difficult issues, and decide which cases to litigate. Nor could it thoroughly treat the reasonable cause determinations themselves. These calculations do not take into account the failure of endeavors to conciliate that also would have to be reviewed. Like the Court in *Fleming,* we are unwilling, without evidence of congressional intent to the contrary, to read the rule-making regulation so narrowly as to render the agency ineffective. (530 F.2d at 594)

In considering "the magnitude of the task," this Court notes that the number of subpoenas issued by the Commission is certainly large indeed and that challenges to such subpoenas would also be frequent. If the Commission were required to consider arguments in every such case, the Commission would be heavily burdened. As the court stated in *Raymond Metal Products,* the regulations should not be read so narrowly as to render the agency ineffective. In addition, the regulation before the court in *Raymond Metal Products* contained no mechanism for review by the Commission; yet, it was upheld by the court. In the instant case, the Court will not invalidate a regulation that does provide for automatic review by the Commission of the determination of the Director of Compliance.

The court in *Raymond Metal Products* further noted:

Mr. Justice Jackson, concurring in *Fleming,* observed that the administrator's authority to delegate was consistent with congressional policy because adequate judicial safeguards existed. 331 U.S. [111] at 123, 67 S.Ct. 1129. Title VII provides

similar protection. As we have previously noted, the commission has no adjudicative powers. The administrative procedure culminates with a decision to either commence or forego suit. An aggrieved person can bring a civil action even if the administrative investigation discloses that his charge lacks merit. Conversely, a respondent who has rejected conciliation can defend in a trial *de novo* a complaint that he has committed an unfair labor practice. Because the Act assures all parties access to a full judicial hearing, the absence of a provision in the regulation for the commission's review of innumerable intermediate administrative proceedings is consistent with the overall statutory design for securing equal employment opportunities. (530 F.2d at 594.)

The court's opinion in *Raymond Metal Products* mandates the conclusion by this Court that the Commission regulation governing the issuance of subpoenas is constitutional. There is no provision in the Act withholding such rule-making power from the Commission, and such a provision would be inconsistent with the intent of Congress to insure effective enforcement of Title VII. This Court, therefore, cannot agree with the Alabama court's holding in *Exchange Bank*.

*Delay*

██ Respondent notes that the subpoena in this case was issued twenty-seven months after the date Ms. Stulman's initial charge was filed and that there was thus a delay of almost two years from the date the charge was filed until any attempt was made by the Commission to investigate the matter. Moreover, respondent contends, no attempt was ever made to investigate the allegations of Ms. Stulman's initial charge, alleging religious discrimination, until the amended charge was filed twenty-five months later, in January of 1975, which alleged a wholly unrelated basis of discrimination. Respondent concludes that the Commission acted unreasonably in its undue delay in commencing investigation of this matter.

Respondent again relies on *EEOC v. Exchange Security Bank, supra.* In that case, the complainant filed a charge on February 19, 1971. On December 15, 1972, various subpoenas were issued by the Director of the EEOC's Birmingham office and served upon the respondent. Thereafter, on December 22, 1972, the respondent petitioned the Commission's Director of Compliance to revoke, quash or modify the subpoenas issued by the Birmingham office pursuant to 29 C.F.R. § 1601.15(b). On January 15, 1973, the Director of Compliance denied the respondent's petitions and upon the respondent's continued refusal to provide the requested information, the Commission, on June 14, 1974, filed suit seeking enforcement.

The court denied the Commission's application for enforcement, holding in part that the investigation and the necessity to obtain the documents and testimony were too stale to justify judicial action. The court reasoned:

As the facts outlined above disclose, the Commission's subpoenas, which were issued in furtherance of its reasonable cause investigation, were not issued until some 21 months after the complainant filed her charge with the Commission, and some 9 months after the effective date of amendments to Title VII. Those amendments, at the very least, placed on the Commission the burden of issuing its reasonable cause determination on the matter that had at the time been pending before it for a little more than one year, 'as promptly as possible and, so far as practicable, not later than' approximately the end of July, 1972. Yet the Commission did not seek court enforcement until July of 1974. The Commission has made no effort to explain its procrastination or to justify its failure to expeditiously investigate the charges that were filed with it some 40 months prior to the filing of the instant application for enforcement with the district court. The court is of the opinion that this unexplained delay, on these facts, does not justify the court's favorably considering the application. (11 FEP Cases at 765)

The court based its decision on 42 U.S.C. § 2000e–5(b) which requires the Commission to make a reasonable cause determination "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge . . . ." This Court declines to follow the holding of *Exchange Bank* for several reasons. First, examining the language of the statutory provision, it appears that the 120 day period is precatory and not mandatory. The provision specifically states "as promptly as possible" and "so far as practicable", phrases which suggest that Congress intended to give the Commission flexibility in making reasonable cause determinations.

In *EEOC v. Cleveland Mills,* 502 F.2d 153 (4th Cir. 1974), the court held that the Commission did not lose its right to seek judicial enforcement when the 180-day period following filing of charges expired; thus, an action filed four years after the charge was filed was not untimely.

Although *Cleveland Mills* involved a different statutory provision from the instant one, the case illustrates the reluctance of the court of appeals for this circuit to circumscribe the authority of the Commission through rigid time limitations. The court stated:

> Congress was well aware of the fact that it was taking the Commission from eighteen to twenty-four months to administratively process a majority of the complaints. It knew of the Commission's accumulated backlog of cases and of the likelihood that the number of filings would continue on the increase. Nor was there any likelihood that the grant of enforcement powers to the Commission would accelerate its performance in seeking the disposition of complaints in the administrative process by voluntary compliance.

> These conditions make it highly unlikely that the Congress would have considered the imposition of narrow and precise time limits upon the Commission's right to file an action for judicial enforcement. If it had intended to impose a 180-day cut off on the Commission's right of action, and

administrative proceedings dragged on as they had been doing, most of the aggrieved parties would be denied Commission representation in court and left to their own devices to seek judicial enforcement of their rights. (502 F.2d at 156–157)

This Court, aware of the overwhelming caseload of the Commission and of the difficulties for the Commission and for complainants whose charges would have to be dropped that the holding of *Exchange Bank* presents, declines to adopt that holding.

■ The Court further bases its decision on respondent's failure to show that it was prejudiced through any delay. In *Chromcraft Corporation v. EEOC,* 465 F.2d 745 (5th Cir. 1972), the court held that the Commission acted reasonably in not serving the employer with notice of pending charges for more than one year, where the delay resulted from the absence of sufficient personnel to process the work load and from fear that reprisals would result from earlier service. At that time there were no statutory or regulatory provisions establishing a time limitation within which an employer had to be served with a copy of the complaint. Thus, the decision of the court was governed by Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706, which states that a federal court can act to "compel agency action unlawfully withheld or unreasonably delayed." Here, too, there is no statutory time limitation, and the Court must interpret the phrases "as promptly as possible" and "so far as practicable." In so doing, the Court finds that the test of unreasonable delay in Section 706 of the Administrative Procedure Act is a useful one and should be applied in the instant case.

■ In applying the test of unreasonable delay, the Court finds that the respondent should show prejudice before the Court will hold the delay has been unreasonable. Respondent has failed to do so in the instant case. Respondent was notified of the charge within the applicable time period and thus has been able to preserve any evidence relevant to the charge. This is particularly true in the instant case, where respondent has been involved in ne-

gotiations with Ms. Stulman's lawyer to work out a satisfactory solution to the references question. Because of these negotiations, respondent has been kept aware of the problem and has been able to preserve documents.

Finally, the charge in the instant case alleges a continuing violation and not only one that occurred several years ago, as in *Exchange Bank.* In those circumstances, the delay between the alleged discrimination and the investigation is not as long as respondent contends.

The Court concludes, for the reasons set forth above, that the Commission did not act unreasonably in commencing investigation of this matter. Therefore, the Court will not refuse to enforce the subpoena on the basis of undue delay.[1]

*Scope of the Subpoena*

Respondent contends that compliance with the subpoena in the Stulman matter would be unduly burdensome in that it would require the respondent to assemble an immense amount of information and in that the subpoena calls for information irrelevant to the Stulman charge in its demand for data with respect to race and sex. Respondent further argues that race discrimination was never a part of either of the Stulman charges and, therefore, any portion of the subpoena which requests that records be identified according to race must be considered overly broad on that basis alone. An affidavit of Doris Martin, the Equal Employment Opportunity Coordinator of the Company, concludes that the information available to the Company would require approximately 150 man-hours of work and that the information requested for the period January, 1969 through January, 1970 is on microfilm and retrieval

thereof would require even more time than the 150 hours.

The Commission has requested the following information from respondent:

1. All Visi-Records and Application for Employment forms and records reflecting the same information, for all employees, whether currently employed or not, identified by race, sex and religion employed in the Data Processing Department at headquarters from January 1, 1969, through January 1, 1975.

2. All performance rating forms, personnel performance evaluation forms, and probationary period performance evaluation forms, and records reflecting the same information, for the same employees as in number 1, identified by race, sex and religion.

3. All personnel statistics forms, salary survey plots, and office salary scatter plots for the same employees.

4. All salary budget records, notice of salary adjustment, and salary change notice forms for the same employees.

5. All promotion, transfer and training actions taken with respect to all of the same employees.

6. All exit interview reports and related records for the same employees.

A second subpoena, whose relevance has not been challenged, requests the following information.

1. All references, records, including telephonic and written inquiries from companies, and all other documents or materials which relate to, refer to, or touch on the job performance of Ms. Rhona Stulman.

2. The names, addresses, telephone numbers, titles and job assignments of all persons employed at headquarters who have given or give references or recom-

---

1. Since the time that the Court prepared the above analysis, it has come to the Court's attention that the *Exchange Bank* case was reversed on appeal by the Fifth Circuit. (*See* 91 *Lab.Rel.Rep.*, Analysis 61 (BNA, April 19, 1976)). On April 21, 1976, the Court received a letter from respondent acknowledging this reversal and attaching copies of three recent cases: *EEOC v. South Carolina National Bank,* 12 FEP Cas. 843 (D.S.C.1976); *EEOC v. Moore Group, Inc.,* 12 FEP Cas. 868 (N.D.Ga.1976); and *EEOC v. Metro Atlanta Girls Club,* 12 FEP Cas. 871 (N.D.Ga.1976). For the reasons noted above by the Court, the Court will not refuse to enforce the subpoena on the basis of undue delay. The three cases submitted by respondent, which reach the same result as *Exchange Bank,* are not persuasive.

mendations for Ms. Stulman, and for other past employees.

3. All agreements, guidelines, directives, procedures or policies used, followed or otherwise implemented by USF&G, either internally or in cooperation with other companies, which relate to, touch on, or refer to the providing of job references or other information reflecting on the work performance of an ex-employee.

4. All references, records, including telephonic and written inquiries from other companies, and all other materials which relate to, refer to, or touch on the job performance of past headquarters employees other than Ms. Stulman, and which were available for management's use during the period January 1, 1969, through January 1, 1970.

### A. *Relevance*

It should be kept in mind that these documents are sought in relation to the charge of retaliation and discriminatory references and recommendations. Respondent contends that two questions are thus presented. First, whether the requested information, which concerns the employment practices of the Company, is relevant to a charge of retaliation and discriminatory references. And second, assuming information on employment practices is relevant, whether information concerning race and sex is relevant to a charge of national origin discrimination.

The relevant statutes have been quoted and will not be repeated here. Courts have interpreted these provisions broadly to grant the Commission broad investigatory powers. In *Graniteville Co. v. EEOC,* 438 F.2d 32 (4th Cir. 1971), the court reviewed the legislative history and reversed the lower court, specifically stating that the district court's conclusion that Congress intended to deny the Commission broad investigatory powers was not supported by the legislative history. The court quoted with approval the following paragraphs from *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355, 358 (6th Cir. 1969):

We consider an employer's 'pattern of action' relevant to the Commission's determination of whether there is reasonable cause to believe that the employer has practiced racial discrimination. [Citation] Discrimination on the basis of race is by definition class discrimination, [citations], and the existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainant may well justify an inference that the practices complained of here were motivated by racial factors. Moreover, evidence concerning employment practices other than those specifically charged by complainants may properly be considered by the Commission in framing a remedy. Title VII of the Civil Rights Act of 1964 should not be construed narrowly, and the Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties. (438 F.2d at 42)

The court in *EEOC v. University of New Mexico,* 504 F.2d 1296 (10th Cir. 1974), noted the evolution of the law governing investigations as follows:

The law governing the limits on the administrative power of investigation has evolved from the earlier judicial condemnation of fishing expeditions to that of enforcement of the subpoena power 'if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.' *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950). All that is now required is that the investigation be for a lawfully authorized purpose. (504 F.2d at 1302)

 Guided by these judicial pronouncements of the broad investigatory powers of the Commission, the Court turns to the question of whether information concerning respondent's employment practices is relevant to a charge of retaliation and discriminatory references. The Court holds that it is. Although Ms. Stulman's allegations relating to unlawful employment practices which occurred on the job were

untimely for independent charge purposes, they form the basis upon which a motivation on the part of the company to retaliate against Ms. Stulman through bad references and recommendations in violation of Title VII may rest. It is not a violation of Title VII to provide a bad reference or recommendation if there is a nondiscriminatory basis for doing so.

■ Turning to the second question, the Court holds that the Commission may require production of documents concerning sex and race discrimination. The charge filed by Ms. Stulman on January 15, 1975, alleges that she was retaliated against because she filed a charge with the Commission. Her allegation is stated in broad terms, and it is reasonable for the Commission to seek to investigate the possibility that the Company retaliates against any person who files a charge. The Commission should not be limited to investigating retaliation on the basis of national origin when the charge is broadly framed. Possible retaliation and motivation for that retaliation on the basis of sex and race are, in the Court's opinion, relevant to the charge under investigation.

The Court concludes that the information demanded in the subpoenas is relevant to the charge under investigation.

### B. Burden

■ Respondent contends that the subpoena would be unduly burdensome in that it would require the respondent to assemble an immense amount of information. The Court holds that, assuming it to be true that compliance with the subpoena would be burdensome, burdensomeness alone is not a sufficient basis for refusal to enforce a subpoena. 42 U.S.C. § 2000e–8(a) provides that the Commission shall have access to all information that relates to unlawful employment practices and is relevant to the charge under investigation. It places no limitations on the Commission's access to materials on the basis of the burden to the company. As the court stated in *H. Kessler & Co. v. EEOC,* 53 F.R.D. 330 (N.D.Ga. 1971), *aff'd,* 468 F.2d 25 (5th Cir. 1972),

*rev'd on other grounds on rehearing en banc,* 5 Cir., 472 F.2d 1147, *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 398 (1973):

> If the information or records sought is relevant or material to the charge under investigation and the EEOC proceeds as authorized by the statute, then any inconvenience or difficulty (which is actually inherent in *any* compulsory process proceeding) must be considered as a 'part of the social burden of living under government.' (53 F.R.D. at 336)

The Court will not deny enforcement of the Stulman subpoenas on the grounds of burdensomeness.

### Conclusion: Stulman

The Court, having considered respondent's arguments and having held these arguments are without merit, will order that the Stulman subpoenas be enforced.

### II. Statement of Facts: Jethro Charge (HM75–1812)

On July 10, 1972, Juanita Jethro filed a charge against the Company with the Commission at its St. Louis District Office. The charge stated:

> I have been working for the co. for 3 years, 6 months and 6 days. Since this time I have not received a promotion. I was told when I began to work there that promotions were made on a seniority basis. Three white girls have been promoted with less seniority than I. To my knowledge I have never been evaluated by my supervisor, and my work has been as good or better than any of my co-workers. I believe that the failure of my employer to promote me is based on my race (Black). There are only 5 Black out of approximately 130 employees.

The Jethro charge was given control number TSL3–0051 and, on July 19, 1972, was deferred to the Missouri Commission on Human Relations. On September 18, 1972, the 61st day following deferral, the Commission assumed jurisdiction over the charge. On September 25, 1972, the Com-

mission served a notice of the charge on the Company.

On January 17, 1973, the Missouri Commission on Human Relations informed the respondent that it "did not find reasonable cause to believe that the complainant was discriminated against." On September 16, 1974, the St. Louis District Office notified Ms. Jethro and respondent that it had administratively closed the Jethro charge. On December 3, 1974, the St. Louis District Office notified the Company that the charge had been reopened for further investigation.

On July 26, 1974, the Commission adopted internal guidelines which provided for the administrative processing of 707 charges and 706 charges by the Office of the General Counsel in cooperation with its District Offices. In conformity with these guidelines, the Jethro charge was transferred to the Baltimore District Office for administrative processing with a 707 Commissioner's Charge, *Powell v. United States Fidelity and Guaranty Co.,* TBA5–0336.

On January 8, 1975, Ms. Jethro wrote a letter to the St. Louis District Office requesting that her charge be closed. Her request was referred to the Baltimore District Office. On March 19, 1975, the Commission advised Ms. Jethro that it did not consent to the withdrawal of her charge.

The instant suit is an application for enforcement of a subpoena seeking certain records the Commission alleges are relevant to the investigation of the Jethro charge. The respondent herein objects to subpoena enforcement. The Court will now turn to the respondent's grounds for objection.

*Commissioner's Charge*

Respondent contends that the Commissioner's charge is invalid and objects to the procedure of consolidating individual charges with the Commissioner's charge. This Court has already considered and rejected this contention in *EEOC v. United States Fidelity & Guaranty Co.,* HM75–366, Oct. 31, 1975, and will not review its determination here.

*Reopening the Case*

 Respondent contends that the Commission's attempt to reopen the case on December 3, 1974, after it had been closed and a right to sue letter had been issued on September 16, 1974, was improper and in violation of the Procedural Regulations. Respondent contends that there is no authority, express or implied, which authorizes or supports the Commission's right to reopen a case once it has been administratively closed, reasoning:

> While we can conceive of an argument being made to allow the Commission to reopen a previously closed case under extenuating circumstances—such as when the agency has been temporarily unable to locate the charging party—the Commission cannot, and, we submit, should not be allowed to reopen a case where, as here, the case was closed because of the charging party's failure to proceed. (Respondent's Opposition at 4)

The Commission contends that on the date the District Director administratively closed the case, after repeated attempts to contact Ms. Jethro had failed, his administrative authority to do so had been terminated pursuant to the Commission's delegation of responsibility to the Office of the General Counsel, for the administrative processing, including investigations, of 707 Commissioner's charges and all 706 charges related thereto. Upon discovery of this administrative error, prompt corrective action was taken by reopening the case and notifying Ms. Jethro and the respondent.

The Court holds that the Commission did not exceed its authority by reopening the case. First, Section 1601.19b(b) gives the Commission the authority to reconsider its determination of no reasonable cause and its subsequent dismissal of the charge "at any time." Although the Commission here did not reconsider its *own* dismissal of the charge but that of the District Office and thus its action does not specifically come within the terms of Section 1601.19b(b), the Court will not rely upon this technical difference to curtail all investigative efforts

relevant to the Jethro charge. This is particularly true since the respondent has not shown that it was prejudiced by the short time period of approximately 90 days in which the charge was closed.

Turning to the Notice of Right to Sue, the Commission contends that the issuance of the Notice was an administrative error and that the Notice does not cut off the Commission's jurisdiction for administrative processing purposes or for bringing a separate legal action with respect to the charge.

The Court holds that the issuance of the Notice does not, in the instant case, act to cut off the Commission's right to investigate the charge. Ms. Jethro did not choose to sue, and respondent has not shown that prejudice resulted from the issuance of this Notice. The Notice is a legal document which is a prerequisite to the filing of a private action under Title VII, and its issuance cannot effectively terminate the Commission's investigatory power.

## Withdrawal of a Charge

Respondent contends that the failure of the Commission to approve the withdrawal of the Jethro charge was an abuse of discretion. Ms. Jethro, on January 8, 1975, requested that her charge be closed. On March 19, 1975, the Commission advised Ms. Jethro that it did not consent to the withdrawal of her charge. Respondent argues:

In view of the final findings of the Missouri Commission, the EEOC's own closing of the case and issuance of a Notice of Right to Sue, and the charging party's unequivocal intent to withdraw her charge, the Respondent submits that the Commission's jurisdiction over the Jethro charge ceased before the issuance of the instant subpoena. Furthermore, once a suit letter was issued by the Commission, it could not vitiate its administrative processes in the case by denying consent to the charging party's withdrawal of the charge. (Opposition at 7)

Section 1601.9 of the Regulations states:

A charge filed by or on behalf of an aggrieved person may be withdrawn only by the aggrieved person with the consent of the Commission.

The provision gives the Commission discretion to determine whether or not a charge should be withdrawn. The Commission has filed an affidavit of David Zugschwerdt, Assistant General Counsel of the Commission, which provides in paragraph 12:

Ms. Jethro stated to the EEOC Investigator that the reason that she had written the letter requesting withdrawal was because her boss, Mr. Moss, had called her into his office and asked if she were happy with her current position and if so whether there was any need to pursue her charge. Ms. Jethro agreed to write a letter to the St. Louis District Office requesting that her complaint be withdrawn and to send a copy to USF&G.

In the circumstances outlined in the affidavit, it could not be said that the Commission abused its discretion in refusing to permit the withdrawal of the charge. Nor do the other factors, such as the Commission's closing of the case, the issuance of a Notice of Right to Sue, and the final findings of the Missouri Commission, all discussed by the Court herein, combine with the complainant's request for withdrawal to amount to an abuse of discretion. The Commission had the authority to act as it did with respect to each of these incidents and did not abuse its discretion in doing so.

## The Missouri Commission

Respondent contends that the Commission failed to give substantial weight to the findings of the Missouri Commission on Human Rights which found that there was "no reasonable cause to believe that the Complainant was discriminated against." Respondent relies on 42 U.S.C. § 2000e–5(b), which provides:

In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by state, or local authorities in

proceedings commenced under State or local law . . . .

The statute provides that the Commission shall give "substantial weight" to the state findings in making a reasonable cause determination and not in deciding whether to investigate a charge. This provision does not require the Commission to abstain from investigating a charge which has been subject to a prior no cause finding by a state agency. Thus, the Court finds respondent's argument to be without merit.

*Additional Arguments*

Before turning to an examination of the subpoena itself, the Court notes that respondent has raised several contentions with respect to the Jethro matter which were raised in the Stulman case and considered above by the Court. The Court's reasoning and determinations need not be repeated here in full. It is sufficient to state that the Court found these contentions to be lacking in merit. The contentions considered above were:

1. The subpoena is invalid because it demands that various personnel records be presented to a person not authorized to receive them, namely the Staff Attorney for the Commission's General Counsel. The Regulations provide that charges of unlawful discrimination when filed in a Commission District Office are to be investigated by that office and as such the St. Louis District Office is the only Commission entity authorized to investigate this matter.

2. Section 705(b)(1) of Title VII does not contemplate the involvement of the General Counsel's Office in the investigative stage of a local proceeding filed by a single individual in accordance with Section 706 in a local District Office.

3. Following the holding of *Exchange Bank, supra,* respondent contends that there was a delay of some twenty-four months from the date the charge was filed until any attempt by the Commission to investigate this matter and that the Commission acted unreasonably in its undue delay.

4. Again relying on *Exchange Bank,* respondent contends that the Commission's procedures for review of a petition for revocation of its subpoena do not comply with the requirements of constitutional due process.

*Scope of Subpoena*

Respondent contends that compliance with the subpoena in the Jethro matter would be unduly burdensome. Respondent states that the subpoena demands access to some nine different personnel forms and reports of all employees, present and past, for the years January 1, 1970 through January 1, 1975, identified by race and sex, and that these demands cover approximately 125 present employees and some 183 past employees over the last five years requiring review amounting to one week's time were a single individual to work full time assembling the data. Respondent further contends that it has already made available the 126 basic personnel records of all current employees of the St. Louis branch office as of September 1974 as well as training materials and job descriptions. It is also noted that the Missouri Commission was given Company Equal Employment Opportunity Reports as well as documents respecting the performance ratings of Ms. Jethro and other similarly situated employees.

The Company argues that the Commission's demand that the numerous employee personnel records be identified according to sex, a form of discrimination never alleged in either the Missouri State or EEOC charges by Ms. Jethro, is wholly irrelevant to the underlying charge, and therefore any portion of the subpoena which requests that records be identified according to sex must be considered overly broad for that reason.

Ms. Jethro's charge has been set out in full above. Basically, she charges that the Company failed to promote her on the basis of her race. The items requested in the subpoena are as follows:

1. All Visi-Record Application for Employment forms, and records reflecting the same information, for all employees, identified by race and sex, employed at

the St. Louis office during the period January 1, 1970 through January 1, 1975.

2. All personnel statistics forms.

3. All salary survey plots.

4. All salary change notices, salary budget records, notices of salary adjustment.

5. All office salary scatter plots.

6. All promotion, transfer and training actions taken with respect to the same employees.

7. All personnel performance evaluations and performance ratings.

■ The first question is whether the Commission can request that information be identified by race and sex when the charge alleges only discrimination on the basis of race. The Court above has noted that courts have interpreted the relevant statutory provisions broadly in order to grant the Commission broad investigatory powers. As a lay person, Ms. Jethro cannot and should not be expected to make a legal conclusion as to the bases upon which she is being discriminated against. Ms. Jethro falls into at least two classes protected by Title VII, Blacks and females. Any discrimination she may have suffered could well have been compounded by the fact that she is both Black and female. Thus, investigation into both areas is reasonable and related to the charge filed.

■ The Court further finds that the fact that the respondent has previously supplied certain materials to the Missouri Commission has no bearing on its duty to furnish these materials to the Commission which is conducting its own separate investigation.

■ The question of burden has also been discussed above. Since the Court finds that the material requested is relevant to the charge under investigation, it would take a far greater showing of hardship than the fact that it would take one person one week to assemble the data before the Court would find the respondent unduly burdened.

*Conclusion: Jethro*

For the reasons noted above, the Court holds that the subpoena as to the Jethro charge must be enforced.

III. *Statement of Facts: Kohagen Charge (HM75–1813)*

On June 1, 1973, Nancy Kohagen filed a charge against USF&G with the Iowa Civil Rights Commission. This charge alleged that USF&G had discriminated against her and other female persons because of their sex in violation of Title VII. On July 13, 1973, the Iowa Commission, pursuant to an agreement with the Commission, lodged a charge executed and verified by Ms. Kohagen for that purpose, with the Kansas City District Office of the Commission. The charge stated:

> I am pregnant, expecting a baby in September, 1973. I informed my employer of this in May, 1973. He told me I would have to quit working when I was six months pregnant. My last working day was June 8, 1973. I had not planned on quitting this soon.

On August 1, 1973, the Commission assumed jurisdiction over the Kohagen charge, and on that day a Notice of the Kohagen charge was served on respondent. The charge was later transferred to the Baltimore District Office for administrative processing in conjunction with a 707 Commissioner's Charge, *Powell v. USF&G.* The Commission is now asking the Court to enforce a subpoena seeking certain records allegedly relevant to the Kohagen charge.

Respondent makes several of the same arguments in this case as have been discussed above, and these arguments will not be repeated here. The Court will discuss two issues below which arise out of the facts of the Kohagen charge.

*Waterloo Commission*

■ Respondent contends that the subpoena in this case was issued after Ms. Kohagen's charge of employment discrimination had been fully investigated by the Waterloo (Iowa) Commission on Human Rights in June-December, 1973. The

Waterloo Commission issued its finding of probable cause in December, 1973, and conciliation efforts with regard to this charge were about to begin. Thus, respondent contends, no further investigation is required for final resolution of this matter, and there can be no proper purpose for the information requested by this subpoena.

Respondent notes the following facts in support of its contentions: Nancy Kohagen commenced her employment with the Company's Des Moines, Iowa office on May 26, 1970 and resigned on June 8, 1973 because of pregnancy. She filed a charge on June 7, 1973 with the Waterloo Commission on Human Rights alleging discharge based on sex discrimination. On June 13, 1973, the Waterloo Commission began its investigation of the charge by issuing an extensive interrogatory dealing with the circumstances of the Kohagen termination, the reasons therefore, the respondent's customary procedures respecting discharges, the respondent's recruitment and application for employment procedures, and fair employment practices. The interrogatory was promptly completed in full and returned to the Commission on June 18, 1973. In addition, Mr. Terry Dolphin, investigator for the Waterloo Commission, interviewed approximately five of the Company's employees concerning the allegations in the charge. During the course of his investigation, Ms. Kohagen was offered reinstatement to her former position. It was later communicated to the Company that Ms. Kohagen had declined the reinstatement offer.

While the Waterloo Commission investigation was in progress, the respondent received notification from the Iowa Civil Rights Commission that Ms. Kohagen had filed a complaint with that office on June 7, 1973. The Iowa State Commission decided to defer its processing of the charge for 45 days to allow the Waterloo Commission to continue its investigation. In this communication, the Iowa Commission, a statutory § 706 agency, stated that after expiration of 45 days, if it was not satisfied with the local commission's progress, or if the complainant was unsatisfied with the action

taken by the local agency, it (the Iowa Commission) would immediately begin a new investigation of the allegations. The Iowa Commission did not initiate another investigation of the matter at any time.

On December 11, 1973, the Waterloo Commission issued its determination. The Commission found that there was probable cause to believe that Ms. Kohagen's complaint was well-founded and stated that it was forwarding a proposed Conciliation Agreement to the respondent in order that a prompt voluntary settlement of the charge might take place.

Respondent expresses its contention as follows:

It is the Respondent's position that it fully cooperated with the investigation of this charge made by the Waterloo Commission, and it is now entitled to proceed with conciliation efforts respecting the Kohagen charge with the local Commission without being further subject to another investigation of this charge by the EEOC. The Commission's investigation covered all aspects of the circumstances of the Kohagen termination as well as the Respondent's fair employment practices and procedures. The investigation conducted by the local Commission proved satisfactory to the Iowa State Commission which saw fit to accept the local Commission's finding and to refrain from conducting its own investigation of the charge. Conciliation should be allowed to proceed in this case, without a second investigation of the charge. This is especially true in view of the fact that during the local agency's administrative processing of the case, an offer of reinstatement was made to Kohagen, and the Respondent stands ready to offer reinstatement at the present time. Thus, full resolution of this matter with regard to Ms. Kohagen can be achieved on the basis of the full investigation already conducted by the Waterloo Commission. Nothing can be gained by an extensive search by the EEOC of Company records as requested by this subpoena at this time, unless it is for the improper purpose of

conducting a fishing expedition. (Respondent's opposition at 3–4)

Respondent appears to make an argument similar to that raised above in the Jethro case—that the Commission failed to give "substantial weight" to the findings of the local commission as required by 42 U.S.C. § 2000e–5(b). This statute provides that the Commission shall give "substantial weight" to state or local findings when making a reasonable cause determination and not when deciding whether to investigate a charge. This provision does not require the Commission to refrain from investigating a charge which has been subject to a prior finding by a state or local agency. The Commission is an entity separate from any local commission and is entitled by law to conduct its own separate investigation regardless of the outcome of a local investigation. Therefore, the Court holds that respondent's argument is without merit.

*Scope of the Subpoena*

Respondent contends that the subpoena should not be enforced because it would require the assembly of a burdensome amount of information. Respondent states that the documents demanded cover approximately 52 current employees and over 100 past employees, amounting to approximately forty man-hours of work, and that it has already made available to the Commission the basic personnel records of current employees of the Des Moines branch office as of September, 1974, as well as copies of all written policies of the Company with respect to pregnancy benefits and maternity leaves.

The respondent further contends that the Commission's demand that the employee personnel records be identified according to race, a form of discrimination never alleged by Ms. Kohagen, who is Caucasian, in either the Waterloo Commission or the Iowa State Commission is wholly irrelevant to the underlying charge and should be considered overly broad for that reason.

The subpoena requests the following information:

1. All Visi-Records, application for employment forms, and records reflecting the same information for all employees, whether currently employed or not, identified by sex and race, employed at the Des Moines and Waterloo offices during the period January 1, 1970 through January 1, 1975.

2. All lateness-absence records summaries.

3. All lateness-absence records.

4. All directives, instructions, guidelines or other regulations received, developed or followed at the Des Moines and Waterloo offices during the period January 1, 1970 through January 1, 1975, relating to leave and/or benefits for maternity purposes.

The question here is whether the Commission can request that information be identified by race and sex when the charge alleges only discrimination on the basis of sex. In considering the Jethro matter above, the Court held that the Commission could request both race and sex identification where the complainant was Black and female and could have been discriminated against on both grounds. In the instant case, on the other hand, Ms. Kohagen is Caucasian and could not complain of discrimination on the basis of race. Further, it is not difficult for a lay person in this situation to identify the bases upon which she is allegedly being discriminated against. Unlawful termination because of pregnancy could only be grounded in sex discrimination. For these reasons, the Court will not enforce those portions of the subpoena which request identification of records by race.

On the issue of burdensomeness, the Court refers to its earlier statement that, if the material is relevant, it cannot be considered burdensome for the respondent to supply that material in the absence of special circumstances. No such circumstances exist here, and the Court does not consider forty man-hours of work unduly burdensome.

*Conclusion: Kohagen*

The Court holds that the subpoena, insofar as it requests information regarding sex, must be enforced. But respondent need not identify any documents requested by race.

IV. *Statement of Facts: Cross Charge (HM75–1814)*

On September 20, 1971, Rita Cross lodged a charge against respondent with the San Francisco District Office of the Commission, stating:

> I feel the above named company discriminated against me because of my race, in that I was demoted, harassed and subsequently terminated. Reason given, too many mistakes.
>
> I feel this was unfair and I was terminated because I am Black.
>
> I feel a white employee would not be terminated for the same reason.

This charge was deferred to the California Fair Employment Practices Commission. Upon notification by the California Fair Employment Practices Commission that it had terminated proceedings with respect to the Cross charge, the Commission assumed jurisdiction on October 4, 1971. On March 27, 1972, in conformity with the Commission policy reflective of the amendments to Title VII, effective on March 24, 1972, which required notices of charges to be served within 10 days of their filing, the Commission served notice of the Cross charge on the Company. Subsequently, the Cross charge was transferred to the Baltimore District Office and consolidated for administrative processing with the 707 Commissioner's Charge, *Powell v. USF&G.* The Commission is now seeking information by subpoena which is allegedly relevant to the charge under investigation.

Respondent raises many of the same arguments as in the other cases discussed above, and the Court will not repeat that discussion below. The Court will now turn to those arguments raised for the first time with respect to the Cross charge.

*Undue Delay*

Respondent contends that the Commission acted unreasonably by its undue delay in investigating the Cross charge. The Court above has reviewed the arguments on the question of delay and expressed its disagreement with the holding of *EEOC v. Exchange Security Bank, supra.* To the extent that respondent is relying on the fact that the Commission delayed for nearly three years in commencing any investigation of the Cross charge to prevent subpoena enforcement, the Court finds the contention without merit. Respondent, however, raises a new point in this connection which was not discussed above. This point is expressed as follows by the respondent:

> Nearly three years passed between the time Ms. Cross filed her charge of discrimination with the E.E.O.C. and the commencement of any investigation thereupon. During this time, the Commission deferred this matter to the California Fair Employment Practices Commission, without any notification to the Company. In its failure to notify Respondent of its deferral to the California Commission, the E.E.O.C. participated in the California Commission's violation of California state law. (at 3–4)

It appears that respondent is contending that the EEOC should have notified it of the deferral of this matter to the California Commission and of the California agency's "termination" of its proceedings in the case on October 4, 1971. The only authority respondent cites for this proposition is Section 1422.2 of the California Fair Employment Practices Act, *West's Ann. Code of Cal., Labor Code,* Part 4.5 (1975), providing:

> (a) The commission shall notify in writing a person, employer . . . or the agents thereof, that they are being investigated under [this statute], either at the time of the initial contact or within 45 days, whichever first occurs.

The provision applies to the California commission and does not determine the duties of the E.E.O.C. Any violation of that statute by the California commission,

assuming without deciding that there was one, would have no effect on the right of the EEOC to ask the Court for subpoena enforcement. The Commission was not bound by the terms of California state law and can suffer no consequences because the state commission did not follow the state statute.

Nor would any federal statute in effect on September 20, 1971, have required the Commission to give the respondent notice of deferral of the state agency's termination, or of the charge itself. The notice provision, now 42 U.S.C. § 2000e–5(b) was added by amendment effective March 24, 1972, and the Commission served notice of the charge on respondent on March 27, 1972, in prompt conformity with that statute. The Court, therefore, cannot accept the respondent's contention that the Commission unduly delayed the investigation of the Cross charge.

*Consideration of Previous Information*

 The respondent contends that the Commission's subpoena is oppressive and burdensome, as it was issued without consideration of information given to the Commission in a previous investigation of the Cross charge. Pursuant to a request made by Geoffrey Rotwein, a private attorney who notified the Company of his representation of Ms. Cross in this matter, Mr. Rotwein visited the respondent's San Francisco branch office on July 30, 1974, at which time he made an investigation of the allegations of Ms. Cross' charge. As part of that investigation, Mr. Rotwein was given Company personnel records relating to the charge, including documentation concerning Ms. Cross' employment history with respondent, a list of minorities hired from 1970 through 1974, and a summary of the reasons for any terminations among those employees.

Respondent contends that the Commission acted unreasonably and arbitrarily in issuing the instant subpoena, without due regard for the Company's full cooperation in the previous investigation of this matter. Respondent includes a letter from Mr. Rot-wein in which he states that he was appointed by the Commission to handle Ms. Cross' case. In support of its position the Company relies on § 24.1 of the Commission's *Compliance Manual* which states: "(a) Subpoena procedures should be used only after normal investigative methods have been exhausted."

It appears from the affidavit of Doris Martin that, after the investigation of July 30, 1974, respondent next heard from the Commission on August 29, 1974, followed by letters of August 30 and November 5. The letter of August 30 informed the Company that the Cross case investigation was to be consolidated with the Commissioner's Charge. The Court concludes from these events that the Commission was not satisfied with the investigation conducted by Mr. Rotwein and determined that it needed more materials to investigate the charge adequately, materials which could be obtained only by subpoena. The Commission found that "normal investigative methods" were not sufficient and, therefore, sought the information through subpoena. The fact that a preliminary investigation was conducted by Mr. Rotwein, a private attorney appointed by the Commission, in no way affects the Commission's legal right to pursue an investigation through the use of its subpoena power.

*Relevance*

 Respondent contends that the Commission's demand that the numerous employee personnel records be identified according to sex and national origin, forms of discrimination not alleged in Ms. Cross' charge, is wholly irrelevant to the resolution of the underlying charge and is overly broad. Because Ms. Cross is both Black and female and cannot be expected correctly to identify the basis for her discrimination, the Commission should be permitted to investigate the possibility of either or both types of discrimination, sex and race.

The national origin question is more difficult. It appears that Ms. Cross is not Hispanic, although the Commission contends that San Francisco is an area of significant

Hispanic population and that Ms. Cross' charge, coming from San Francisco, necessarily raises the class issue of national origin. In support of its position, the Commission relies on *Jones v. Milwaukee County*, 68 F.R.D. 638, 11 FEP Cases 1246 (E.D.Wis. 1975), which held that black plaintiffs are not precluded from representing a class in a Title VII action which contains persons of other minority racial and ethnic groups. The Court does not find this case persuasive, as it is based on Rule 23(a) and class action principles, rather than on the standards for the enforcement of subpoenas discussed above. Although the Court has stated that the Commission should be given broad investigative powers, in the instant case the Court thinks that the Commission should not be entitled to seek by subpoena any materials identified by national origin when the complainant has not alleged discrimination on that basis and could not do so.

This case can be distinguished from the Stulman matter. In Stulman, the complainant alleged that she was retaliated against because she filed charges with the Commission. A claim of retaliation is a broad one and cannot be pinned down to any particular type of discrimination, such as race, sex or national origin. Complainant allegedly was discriminated against because she filed a charge with the Commission and not because she was a woman or Jewish. She can represent, for purposes of investigation by the Commission, all those who may file charges with the Commission, and this includes Blacks, females, Jewish people, Spanish, etc. Thus, the Commission should be able to investigate all of these potential types of discrimination.

On the other hand, Ms. Cross alleges that her employment was unfairly terminated because she is Black. This claim is more narrow than that of retaliation. Ms. Cross could have been terminated unfairly because she was Black and because she was a female but not because of her national origin. When retaliation is charged, it is reasonable to consider whether the Company retaliates against all those who file charges, regardless of their race, sex or national origin. However, when unfair termination is charged by a Black female, it is reasonable to consider whether the Company unfairly terminates Blacks or unfairly terminates females, but it is not reasonable to consider whether the Company unfairly terminates Hispanic people. Such a consideration must await a charge filed by a Hispanic person.

This decision is not inconsistent with *General Electric, supra*. If, in investigating possible race and sex discrimination in the San Francisco office, the Commission finds evidence of national origin discrimination, the Commission is entitled under *General Electric* to bring suit on that basis of discrimination. However, the Court does not consider national origin discrimination sufficiently "related" to the instant charge to grant the Commission the subpoena power to compel evidence on the question of such discrimination.

*Conclusion: Cross*

The Court holds that the subpoena should be enforced insofar as it seeks information identified by race and sex and that such a subpoena, being relevant, would not be unduly burdensome. However, the Court holds that those portions of the subpoena which seek information on the basis of national origin should not be enforced.

V. *Statement of Facts: McDuffy Charge (HM75-1815)*

On October 11, 1973, Brenda McDuffy filed a charge against respondent with the Oklahoma Human Rights Commission. The charge states:

Today I was given notice over the phone of my termination. I have been working at the above Company for three weeks and believe the Company discriminates in their hiring and termination policies as they did discharge me and at the time I was employed, I was the only Black in the office.

On October 29, 1973, the Oklahoma Commission, pursuant to an agreement with the

Commission, lodged a charge with the Albuquerque District Office of the Commission. This charge contained allegations of discrimination identical to those raised in the charge previously filed with the Oklahoma Commission. On December 31, 1973, the Commission assumed jurisdiction over the charge and subsequently transferred it to the Baltimore District Office for administrative processing with the Commissioner's Charge. The Commission then sought various records in connection with the investigation of that charge.

*Consideration by the Oklahoma Commission*

██ Respondent contends that the Commission's subpoena is oppressive and burdensome as it was issued without consideration of information given to the Oklahoma Human Rights Commission and to EEOC. Following respondent's receipt of the Oklahoma Human Rights Commission's Notice of Complaint and Complaint of Discrimination, the respondent submitted a detailed account of Ms. McDuffy's personnel history with respondent. Thereafter, upon receipt of a Notice of Charge of Discrimination from the Commission, respondent submitted the same information to that agency. The Commission replied that an investigation would commence "in the near future," and that the information furnished it by the respondent would "become part of the investigation." The Company's next contact with the Commission came some eight months later, when the Commission requested further information.

The Company again, as in the Cross matter, relies on § 24.1(a) of the *Compliance Manual*. It contends that the Commission failed to recognize the Company's voluntary cooperation in the investigation, by both the Oklahoma Human Rights Commission and the Commission's Albuquerque office, and thus issued its subpoena despite the likelihood of success of other, more "normal investigative methods."

As stated with respect to the Cross matter, the Commission is entitled to request further information from an employer if it

is not satisfied with that obtained to date. It is not for this Court to determine whether the Commission could make a fair determination of the existence of reasonable cause on the information before it already or whether more information is necessary. The fact that the respondent has offered some information voluntarily to the Commission is commendable but does not operate to cut off the Commission's right to investigate further.

*Relevance*

The subpoena demands access to some five different personnel forms and reports of all employees in the Oklahoma City office for the period January 1, 1970 through January 1, 1975, identified by race, sex and national origin. Respondent contends that the Commission's demand that the records be identified according to sex and national origin, forms of discrimination never alleged in Ms. McDuffy's charge, is wholly irrelevant to the resolution of the underlying charge and overly broad.

For the reasons stated in the Cross matter, the Court will enforce the subpoena insofar as it requests information on sex and race but not insofar as it requests information on national origin. Ms. McDuffy is a Black female and could have been discriminated against on the basis of her race or her sex. However, there is no indication of her national origin, and the Court must conclude she is not Hispanic or American Indian, even though she comes from an area of significant Hispanic and American Indian population. Therefore, any information requested concerning national origin would not be related to Ms. McDuffy's charge.

*Conclusion: McDuffy*

The Court has held that those portions of the subpoena must be enforced that request information concerning race and sex discrimination and that compliance with those portions of the subpoena would not be unduly burdensome. However, the Court will not enforce those portions of the subpoena

which demand identification on the basis of national origin.

### VI. *Summary*

In these five cases of subpoena enforcement, the Court has held that the subpoenas must be enforced as follows:

1. The Stulman subpoena must be enforced in its entirety.

2. The Jethro subpoena must be enforced in its entirety.

3. The Kohagen subpoena must be enforced insofar as it requests information concerning possible sex discrimination.

4. The Cross subpoena must be enforced insofar as it seeks information concerning possible sex and race discrimination.

5. The McDuffy subpoena must be enforced insofar as it requests information concerning possible sex and race discrimination.

The Court has held that the subpoenas are to be quashed in the following respects:

1. The Kohagen subpoena must be quashed insofar as it seeks information concerning possible race discrimination.

2. The Cross subpoena must be quashed insofar as it seeks information concerning possible national origin discrimination.

3. The McDuffy subpoena must be quashed insofar as it seeks information concerning possible national origin discrimination.

The Court will issue an Order accordingly.